UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SWINERTON BUILDERS, INC., A CALIFORNIA CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>ARGONAUT INSURANCE COMPANY,<br><br>Defendant. | Case No. 23-cv-04158-DMR<br><br>**ORDER ON MOTION TO DISMISS**<br>Re: Dkt. No. 15 |

Plaintiff Swinerton Builders, Inc. ("Swinerton") filed an action against Defendant Argonaut Insurance Company ("Argonaut") alleging breach of contract and related claims stemming from three construction projects. Argonaut now moves pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss the complaint for lack of subject matter jurisdiction, arguing that Swinerton's claims are subject to arbitration. [Docket No. 15.] This matter is suitable for resolution without oral argument. Civ. L.R. 7-1(b). For the following reasons, the court converts the motion to dismiss to a motion to compel arbitration and grants the motion to compel.

**I.   BACKGROUND**

**A.   Swinerton's Allegations**

On December 20, 2019, Swinerton, a general contractor, entered into a Master Subcontract Agreement or "MSA" with Northern Services, Inc. ("Northern") as subcontractor. Compl. ¶¶ 1, 5, Ex. A (MSA). The MSA states that it is the "master agreement applying to and governing all projects for which" Swinerton engaged Northern and "sets forth the terms and conditions under which" Northern would provide construction services to Swinerton. Swinerton and Northern agreed to execute work orders for each specific project that would incorporate the MSA by reference. Compl. ¶ 6, MSA 1.

The MSA contains a dispute resolution provision. MSA 8, Art. 15 ("Disputes and Dispute Resolution"). It defines a "dispute" to include Swinerton's denial of a claim by Northern or "another form of disagreement arising from the Subcontract Documents." *Id*. The provision also contains a binding arbitration provision, which requires the arbitration of any "disputes" as follows:

> (f) **Binding Arbitration**. For Disputes not resolved by mediation as set forth above, the Parties agree to resolve such Disputes by binding arbitration as follows:
> . . .
>
> (i) Arbitration shall be administered and conducted using the Construction Industry Arbitration Rules of the American Arbitration Association in effect at the time of initiation or the Parties may mutually agree to select another set of arbitration rules. . . .

MSA 9, Art. 15(f).

Between March 2020 and April 2021, Swinerton and Northern executed three separate work orders under which Northern agreed to perform mechanical work for Swinerton construction projects ("the projects"). Each work order contained language that it was "part of" the MSA between Swinerton and Northern. Compl. ¶¶ 7-9, Exs. B-D.

As a condition of executing the work orders, Swinerton required Northern to furnish performance and payment bonds from an admitted surety insurer in California guaranteeing Northern's subcontract performance and payment obligations to its subcontractors, suppliers, and vendors. Compl. ¶ 10. Argonaut issued the surety performance and payment bonds for the projects. The bonds promised that Argonaut would perform in the event Northern failed to "fully indemnify and save harmless the Obligee [Swinerton] from all loss, liability, costs, damages, penalty, attorney's fees or expense" resulting from any Northern subcontract defaults or in the event that Northern failed to "pay promptly and in full the claims of all persons, firms, or corporations performing labor or furnishing equipment, materials, or supplies incurred in connection with the contract[s] to be performed . . . " *Id*. at ¶¶ 12-14; Exs. E-J (bonds).

Swinerton alleges that the three performance bonds "incorporated the Work Order[s] executed by Northern and Swinerton, and the Work Order[s] incorporated the MSA" without limitation. Compl. ¶¶ 62, 70, 78, Exs. E, F, G.

2

1    Swinerton alleges that Northern commenced performance under the work orders for the
2    projects. Around November 2022, Argonaut notified Swinerton that it was "aware of
3    circumstances and events that may be exposing" Argonaut to losses connected to one of the
4    projects but did not specify the "circumstances and events." *Id*. at ¶¶ 17, 18. Around January 1,
5    2023, Northern's owner and license qualifier passed away, which meant that "Northern was no
6    longer capable of completing the remainder of its work on any of the Projects." Swinerton then
7    notified Argonaut of Northern's defaults on the three projects. *Id*. at ¶¶ 19-21. Swinerton alleges
8    that Argonaut failed to satisfy its obligations under the surety performance and payment bonds.
9    Compl. ¶¶ 27-55.

10   Swinerton filed the complaint in August 2023 alleging ten claims against Argonaut.
11   Claims one through six are for breach of the three project performance bonds and the three
12   payment bonds. Claim seven is for breach of the covenant of good faith and fair dealing based on
13   the six bonds. Claims eight and nine are for fraud and claim ten is for declaratory relief.

14   Argonaut now moves to dismiss the action for lack of subject matter jurisdiction, arguing
15   that Swinerton's claims against Argonaut are governed by the arbitration provision in the MSA.

## II.   LEGAL STANDARDS

17   A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject
18   matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). A court will dismiss a party's claim for lack of
19   subject matter jurisdiction "only when the claim is so insubstantial, implausible, foreclosed by
20   prior decisions of th[e Supreme] Court, or otherwise completely devoid of merit as not to involve
21   a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (citation
22   and quotation marks omitted); *see* Fed. R. Civ. P. 12(b)(1). The challenging party may make a
23   facial or factual attack challenging subject matter jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242
24   (9th Cir. 2000). A facial challenge asserts that "the allegations contained in a complaint are
25   insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d
26   1035, 1039 (9th Cir. 2004). In contrast, a factual attack disputes "the truth of the allegations that,
27   by themselves, would otherwise invoke federal jurisdiction." *Id*. at 1039.

28   Argonaut argues that the court lacks subject matter jurisdiction over the complaint because

3

Swinerton's claims are subject to the MSA's binding arbitration provision. Mot. 1. Although courts have held that a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction "is a procedurally sufficient mechanism to enforce [an] [a]rbitration [p]rovision," *GT Sec., Inc. v. Klastech GmbH*, Case No. 13-cv-3090-JCS, 2014 WL 2928013, at *17 (N.D. Cal. June 27, 2014), the Federal Arbitration Act ("FAA") "directs that a court 'stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.'" *Figuerola Peruvians, L.L.C. v. N. Am. Peruvian Horse Ass'n*, No. CV0904511MMMRZX, 2009 WL 10673941, at *4 (C.D. Cal. Dec. 18, 2009) (quoting 9 U.S.C. § 3). The FAA "does not direct that the court dismiss the claim for lack of subject matter jurisdiction." *Id.* Accordingly, the court construes Argonaut's motion to dismiss as a motion to compel arbitration under Section 4 of the FAA. *See id.* (construing Rule 12(b)(1) motion as petition to compel arbitration, denying motion to dismiss, and staying action pending arbitration proceedings; collecting cases).

The FAA governs written arbitration agreements affecting interstate commerce. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111-12 (2001). Enacted for the purpose of enforcing written arbitration agreements according to their own terms, the FAA embodies "the basic precept that arbitration 'is a matter of consent, not coercion.'" *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (quoting *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). Section 4 of the FAA ensures that "'private agreements to arbitrate are enforced according to their terms,'" *Stolt–Nielsen*, 559 U.S. at 682 (quoting *Volt*, 489 U.S. at 479), by expressly authorizing a party to an arbitration agreement to petition a United States district court for an order directing that "arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

"In deciding whether to compel arbitration under the FAA, a court's inquiry is limited to two 'gateway' issues: '(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). "If both conditions are met, 'the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms.'" *Id.* (quoting *Chiron*, 207 F.3d at 1130). Parties may

4

1  delegate gateway issues of arbitrability to the arbitrator if they "clearly and unmistakably" agree to
2  do so. *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017). "By
3  its terms, the Act leaves no place for the exercise of discretion by a district court, but instead
4  mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which
5  an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218
6  (1985) (emphasis in original; citing 9 U.S.C. §§ 3, 4).

**III.   DISCUSSION**

Swinerton does not dispute that the MSA contains a valid agreement to arbitrate or that the work orders were part of the MSA. Instead, it argues that Swinerton and Northern are the only parties to the MSA and that the disputes between Swinerton and Argonaut "do not fall within the MSA arbitration provision because this action arises out of conduct wholly independent of disputes governed by the agreement." Opp'n 2. In other words, Swinerton disputes the existence of an agreement to arbitrate disputes between Swinerton and Argonaut.

"Generally, the contractual right to compel arbitration may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013) (quotation and citation omitted). Nonetheless, courts have held that where a surety bond incorporates an underlying contract that contains an arbitration provision, the surety agrees to be bound by the arbitration provision of the underlying contract even if it was not a party to that contract. *See Boys Club of San Fernando Valley, Inc. v. Fidelity & Deposit Co.*, 6 Cal. App. 4th 1266, 1274 (1992); *Allied World Ins. Co. v. New Paradigm Prop. Mgmt., LLC*, No. 2:16-CV-02992-MCE-GGH, 2017 WL 4310673, at *3 (E.D. Cal. Sept. 28, 2017) ("To the extent [bond insurer] argues that the arbitration agreement does not apply because it is not a party to the underlying Prime Contract, that argument is negated by the fact that the Bond specifically incorporates the Prime Contract without limitation."). Argonaut argues that under this authority, "[a]n arbitration agreement in an incorporated bonded contract may be used to compel arbitration of disputes involving that incorporated bonded contract." Mot. 3 (citing *Boys Club*, 6 Cal. App. 4th at 1274).

Swinerton does not dispute this authority but distinguishes *Boys Club* on its facts. In *Boys*

5

*Club*, the plaintiff (Boys Club) entered into a contract with a contractor for construction of a building. The contract contained an arbitration clause and required the contractor to obtain a performance bond from a surety. The contractor obtained a performance bond from the defendant surety, Fidelity. 6 Cal. App. 4th at 1270. The bond named Boys Club as obligee and "referred to the contract and made it a part of the bond by reference." *Id*. Boys Club eventually withheld final payment from the contractor based on alleged construction defects and filed a demand for arbitration against the contractor. It subsequently filed an amended demand for arbitration naming Fidelity as an additional party. Fidelity argued that it was not a party to the contract and did not agree to arbitrate. *Id*. Boys Club petitioned the state court for an order compelling Fidelity to join the arbitration and the court denied the petition. *Id*. at 1270-71.

The court of appeal reversed. It noted that "[a] contract performance bond will be read with the [underlying] contract" because the surety contracts with references to the underlying contract as made:

> when a party enters into a contract to do certain work on certain terms, and procures a surety to guarantee the faithful performance of the work, the surety necessarily contracts with reference to the contract as made; otherwise it would not know what obligation it was assuming. And this is particularly so where the bond expressly declares that the contract is made a part of the bond and the terms of the contract are incorporated into the bond.

*Id*. at 1271-72 (quotation marks and citation omitted). The court held that "by the language in its bond incorporating the contract Fidelity intended, and agreed, to be bound by the arbitration provision in the contract even though it was not a party to the contract." *Id*. at 1273. It distinguished cases reaching the opposite conclusion, finding that "[b]ecause of the nature of Fidelity's obligations under its performance bond, it is logical to assume that the parties (including Fidelity) intended not merely that Fidelity would be bound by the result of arbitration between Boys Club and [the contractor], but that Fidelity would join in arbitration of disputes between the parties to the contract in view of the fact that such disputes necessarily affect its liability under the bond." *Id*. at 1273.

Here, Swinerton admits in the complaint that the three performance bonds "incorporated the Work Order[s] executed by Northern and Swinerton, and the Work Order[s] incorporated the

MSA" without limitation. Compl. ¶¶ 62, 70, 78, Exs. E, F, G. However, it argues that *Boys Club* is distinguishable because "[i]n this case, there is no dispute that the bonded contractor was in default" and "[t]he only dispute is the failure of Argonaut to honor the bonds" or acknowledge Swinerton's claims. Opp'n 8-9. But it does not dispute that Argonaut's liability on the bonds likely turns on Northern's own breaches of the work orders. It also does not offer authority for its position that where an obligee sues a surety for breaches of bonds that incorporate a contract containing an arbitration agreement, the obligee (or the surety) is not required to arbitrate claims based on those breaches.

The primary case on which Swinerton relies is *Kramer* but that case is distinguishable. *See* Opp'n 10-11. In *Kramer*, the defendant car manufacturer sought to enforce an arbitration agreement that was part of purchase agreements between the plaintiffs and their car dealerships; the defendant was not a signatory to any of the agreements. 705 F.3d 1124-25. The Ninth Circuit affirmed the district court's denial of the defendant's motion to compel arbitration, rejecting the defendant's claim that the arbitrator should decide whether a nonsignatory could compel the plaintiffs to arbitrate their claims against the manufacturer. *Id*. It held that "the terms of the arbitration clauses are expressly limited to Plaintiffs and the Dealerships" and that there was no "clear and unmistakable evidence that Plaintiffs agreed to arbitrate arbitrability with nonsignatories." *Id*. at 1127. In contrast with *Kramer*, Swinerton does not dispute that the performance bonds incorporated the work orders incorporating the MSA and its arbitration provision. *See* Compl. ¶¶ 62, 70, 78.

To the extent that Swinerton disputes whether the arbitration agreement applies to its claims in this litigation, the MSA delegates that gateway issue to the arbitrator by incorporating by reference the rules of the Construction Industry Arbitration Rules of the American Arbitration Association. *See* MSA 9, Art. 15(f)(i); *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017) (noting that "parties may delegate the adjudication of gateway issues to the arbitrator if they 'clearly and unmistakably' agree to do so" and stating, "[w]e have found such delegation when the parties have incorporated by reference the rules of the American Arbitration Association"). Swinerton does not dispute the MSA's delegation of gateway issues, including the

power to determine arbitrability of a claim, to the arbitrator. Accordingly, the court must enforce the agreement according to its terms and compel the issue of arbitrability of Swinerton's claims to arbitration. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016) (court was "required to enforce . . . agreements 'according to their terms'" and "compel the issue of arbitrability of Plaintiffs' claims to arbitration" where "delegation provisions clearly and unmistakably delegated the question of arbitrability to the arbitrator for all claims").

As noted, Argonaut moves to dismiss the action in its entirety. Where a dispute is subject to arbitration under the terms of a written agreement, the district court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement," 9 U.S.C. § 3, although the Ninth Circuit has held that courts have discretion under Section 3 to dismiss claims that are subject to an arbitration agreement. *Sparling v. Hoffman Const. Co., Inc*., 864 F.2d 635, 638 (9th Cir. 1988). The court finds it appropriate to stay this action pending the outcome of the parties' arbitration proceedings. For case management reasons, the court will accomplish this by administratively closing the case. To reopen the case, the parties are directed to file a joint status report within two weeks of the completion of any arbitration.

## IV.   CONCLUSION

For the foregoing reasons, the court grants Argonaut's motion to compel arbitration and stays this action in its entirety pending the final resolution of the arbitration. The clerk shall administratively close the case. The parties may reopen the case by filing a joint status report within two weeks of the completion of any arbitration.

**IT IS SO ORDERED.**

Dated: March 11, 2024



Donna M. Ryu
Chief Magistrate Judge